UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MORRIS JAFFER, ET AL.,           )
                                 )
         Plaintiffs,             )
                                 )     CIVIL ACTION NO.
VS.                              )
                                 )     3:13-CV-1674-G
ODED AVIEL, ET AL.,              )
                                 )
         Defendants.             )

MEMORANDUM OPINION AND ORDER

Before the court are (1) the motion of defendant Oded Aviel to quash (docket entry 14) and (2) the motion of defendant Chartered Standard Bank ("Standard") to dismiss the plaintiffs' second amended complaint (docket entry 28). For the reasons stated below, the motion to quash is granted and the motion to dismiss is granted in part and denied in part.

I. BACKGROUND

This case concerns an allegedly breached investment contract and access to funds in a Ghanaian bank account. The plaintiffs, Morris Jaffer and Anthony Fertitta, were partners with Brent Mann ("Mann") and JBA Group, Inc. ("JBA

Group") in selling life insurance policies. Second Amended Complaint ("Complaint") ¶ 7 (docket entry 24). Mann and JBA Group would generally pay Jaffer and Fertitta a share of the profits that they received in commissions from selling insurance policies, but in October 2012, Mann and JBA Group instead invested the plaintiffs' share with Oded Aviel. *Id.* ¶ 8. Mann and JBA Group invested $800,000 with Aviel, $400,000 of which Aviel deposited in the Standard Chartered Bank in Ghana in an account numbered 8700235452900 ("the bank account"). *Id.* ¶¶ 15-16. On October 5, 2012, to compensate them for their share of insurance profits, Mann and JBA Group assigned their interests in their investment with Aviel to Jaffer and Fertitta. *Id.* ¶ 9. After the plaintiffs contacted Aviel about recovering this investment, Aviel assigned his interest in the bank account to the plaintiffs on October 19, 2012. *Id.* ¶ 16; Exhibit 1 in Support of Second Amended Complaint (dockety entry 24-1).

Mann requested information about the money in the bank account but was told by Standard's Client Services Department that it could not do anything about the account and that he should contact the Ghana branch directly, as the money had been placed on hold by the Financial Intelligence Unit of the Ghanaian government. Exhibit 2 in Support of Second Amended Complaint (dockety entry 24-2).

The plaintiffs filed this suit against Aviel and Standard in an attempt to recover the funds. In response, Aviel filed what he styled a "motion to quash,"

protesting that this court does not have personal jurisdiction over him. *See* Defendant Aviel's Motion to Quash (docket entry 14). The magistrate judge later found that Aviel's pleading actually constituted a motion to dismiss under Rule 12(b)(2), (3), and (5). *See* Order of June 28, 2013 Regarding Motion to Quash (docket entry 17). In the course of the lawsuit, the plaintiffs twice amended their complaint to add further detail to their claims. *See* Amended Complaint (docket entry 19); Second Amended Complaint (docket entry 24). Standard then filed a motion to dismiss the plaintiff's second amended complaint for failure to state a claim. *See* Defendant Standard Chartered Bank's Motion to Dismiss Second Amended Complaint ("Standard Motion") (docket entry 28). The plaintiffs filed a response, *see* Response to Motion to Dismiss Second Amended Complaint ("Plaintiffs' Response") (docket entry 30), and Standard did not file a reply in support of its motion. The defendants' motions are now ripe for decision.

## II.  ANALYSIS

### A.  Aviel's Motion to Dismiss

Aviel argues that the suit against him should be dismissed because this court does not have personal jurisdiction over him, this is not the proper venue for this lawsuit, and he was not properly served. *See* Motion to Quash at 1. Because the court concludes that it does not have personal jurisdiction over Aviel, it will not consider his other arguments.

1. *Legal Standard*

A federal court may exercise personal jurisdiction over a nonresident defendant if "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is subject to the personal jurisdiction of a federal court sitting in diversity "to the same extent that he would be amenable to such jurisdiction in a state court of the forum." *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Therefore, the court must first apply state law to analyze whether Texas, the forum state, could assert long-arm jurisdiction. See *id.* The Texas long-arm statute confers jurisdiction to the extent that it is permissible under the federal constitution. See *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); see also TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.* (Texas long-arm statute). Therefore, the court need only concern itself with the federal due process inquiry. See *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 647 n.1 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994).

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have sufficient contacts with the forum, resulting from affirmative action on his part, such that the

nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair and reasonable to require the nonresident to defend himself in the forum state. See *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990). The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)) (internal quotation marks omitted).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which he "purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal quotation marks omitted). However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with

the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of in personam jurisdiction may be exercised over a nonresident defendant -- specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action "arises from or relates to the defendant's contact with the forum state," and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quoting *Latshaw*, 167 F.3d at 211) (internal quotation marks omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987). General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (internal citations omitted).

### 2. *Burden of Proof*

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Wilson*, 20 F.3d at 648 (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)) (internal quotation marks omitted); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999). If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

### 3. *Application*

In objecting that this court does not have personal jurisdiction over him, Aviel avers that "I have never lived in Texas and have not visited Texas in many [y]ears. I have never resided in any state other than California. Such [l]awsuit should be filed in California." Motion to Quash at 1.

In response, the plaintiffs make two main allegations connecting Aviel to Texas. They first allege that Aviel and Mann contacted them in June 2012 -- four months before the events at issue in this case -- regarding a completely separate investment opportunity. *See* Plaintiffs' Response to Defendant Aviel's Motion to Quash at 3 (docket entry 20). Since that incident did not relate to this claim, it does not count as a contact for the purposes of establishing claim-specific jurisdiction. *See Holt Oil & Gas Corporation*, 801 F.2d at 777. It is also insufficient to create general jurisdiction over him, as it could not be deemed "continuous and systematic" contact. See *Helicopteros Nacionales*, 466 U.S. at 415-16. The plaintiffs next contend that Aviel sent them an email acknowledging that he owed them the $800,000, and that he tried to negotiate a settlement with them by telephone, both while they were in Texas.[1] Response to Motion to Quash at 3. The court does not see -- and the plaintiffs to do not cite any case law showing -- how those acts could be considered making "purposeful availment" of "the benefits and protections" of this forum. See *Burger King*, 471 U.S. at 475-76. Rather, that minimal level of contact is the sort of "attenuated" connection that courts have held to be insufficient to grant a court

---

[1] Aviel denies that he ever had any settlement negotiations with the plaintiffs. *See* Aviel's Response to Plaintiff Response to Aviel's Motion to Quash Filed by Plaintiff on July 17, 2013 and Marked as Document 20 ("Aviel Reply") at 4 (docket entry 26). However, since factual disputes must be resolved in favor of the plaintiffs when a defendant contests personal jurisdiction, the court must take the plaintiffs' allegations as true. See *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

personal jurisdiction over an out-of-state resident, not the "significant activities" or "continuing obligations" necessary for the court to have jurisdiction over him. See *id*.

The plaintiffs then summarily conclude that they "have clearly established claim specific jurisdiction" and that "Defendant reasonably anticipated being haled into court in Texas." Response to Motion to Quash at 3-4. The court disagrees. The plaintiffs have failed to show how Aviel made purposeful availment of the laws of Texas, nor have they explained why Aviel should have reasonably anticipated being haled into a Texas court in relation to doing business with Mann and JBA Group. Importantly, they do not claim that he conducted the transaction with JBA Group and Mann, from which this suit arose, in Texas. Therefore, the court concludes that it does not have personal jurisdiction over Aviel. His motion to quash -- now labeled a motion to dismiss -- is granted.

B. <u>Standard's Motion to Dismiss</u>

1. *Rule 12(b)(6) Standard*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (*quoting* FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

2. *Breach of Contract*

Standard first argues that the plaintiffs' breach-of-contract claim should be dismissed. Standard Motion at 4-5. The plaintiffs claim that Standard "breached its depository contract" with Aviel, which was "undisputedly assigned" to the plaintiffs. Complaint ¶ 25. To succeed on a claim for breach of contract, the plaintiffs must establish "(1) the existence of a valid contract; (2) performance or tender of performance by Plaintiffs; (3) breach by Defendant[]; and (4) damages resulting from the breach." *Obumseli v. CitiMortgage, Inc.*, No. 4:12-cv-706, 2013 WL 3197911, at *2 (E.D. Tex. Jun. 21, 2013) (citing *Cadillac Bar West End Real Estate v. Landry's Restaurants, Inc.*, 399 S.W. 3d 703, 705 (Tex. App.--Dallas 2013, pet. den'd)). While the complaint is not entirely clear about what Standard did that constitutes a "refus[al] to honor its contractual obligations," Complaint ¶ 25, the plaintiffs imply

that they believe that Standard's decision not to release the funds in the bank account constitutes a breach of the contract to which Aviel and Standard agreed when Aviel opened his account and deposited money with Standard.  *See* Complaint ¶ 25.

Standard maintains that the plaintiffs' claim is insufficient because they "neither attach nor specifically describe the purported 'depository contract.'"  *See* Standard Motion at 5.  In support of this argument, Standard cites several cases in which courts dismissed breach-of-contract claims because the plaintiffs did not identify what contract the defendant had breached, or made general breach-of-contract allegations without stating with any specificity how the defendant breached the contract at issue.  See *id.* (citing *Jarrett v. Chase Home Finance LLC*, No. 3:10-CV-1907-M, 2011 U.S. Dist. LEXIS 47317, at *9-10 (N.D. Tex. May 3, 2011) (Lynn, J.); *Fannie Mae v. U.S. Property Solutions, LLC*, No. H-08-3588, 2009 WL 1172711, at *2 (S.D. Tex. April 28, 2009); *Belluomini v. CitiGroup, Inc.*, No. CV 13-01743 CRB, 2013 WL 3855589, at *3-4 (N.D. Cal. July 24, 2013); *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358-59 (S.D. N.Y. 2001)).  Standard further argues that the plaintiffs' claim fails because they do not "describe any actions or inaction on the part of Standard Chartered that could constitute a breach of the contract, other than 'refus[ing] to honor its contractual obligations.'"  Standard Motion at 5.

While the plaintiffs do not specifically cite the portion of Aviel's contract with Standard that they allege was breached, the court concludes that their allegations are sufficient to survive a motion to dismiss. Unlike the allegations of the plaintiffs in the cases cited by Standard, the allegations of Jaffer and Fertitta clearly refer to Aviel's depository contract, presumably meaning the contract between Aviel and Standard governing Aviel's account. Furthermore, they imply that Standard breached this contract by not releasing the funds in the account after the plaintiffs demanded them. Those allegations state a viable claim for breach of contract. Therefore, Standard's motion to dismiss is denied as to the plaintiffs' claim for breach of contract.

In his reply in support of his motion to quash, Aviel states that Standard released the money from the bank account to him in late December, 2012,[2] and that he then gave that money to Brent Mann. *See* Aviel Reply at 5. Aviel filed that reply on August 2, 2013, before Standard moved to dismiss the plaintiffs' claim, but neither the motion to dismiss nor the plaintiffs' response mention the fact that Standard may have already released the funds at issue in this case. Needless to say, if Aviel did in fact receive the funds from Standard and pass them on to Mann, that would have a considerable impact upon the plaintiffs' claim against Standard.

---

[2]  Aviel actually wrote "December 19, 2013," but since his motion was filed well before that date, the court assumes that he meant 2012.

3. *Conversion*

Standard also contends that the court should dismiss the plaintiffs' claim for conversion. Standard Motion at 6-8. The plaintiffs argue that by refusing to release the funds from the bank account, Standard is liable for conversion. Complaint ¶ 26. However, as Standard points out, "[a] suit for conversion will not lie where a debtor-creditor relationship is created by deposit of a check to the depositor's account, because when deposited the money becomes the property of the bank." See *Houston National Bank v. Biber*, 613 S.W.2d 771, 774 (Tex Civ. App.--Houston [14th Dist.] 1981, writ ref'd n.r.e.); see also *Upper Valley Aviation, Inc. v. Mercantile National Bank*, 656 S.W. 2d 952, 955 (Tex. App.--Dallas 1983, writ ref'd n.r.e.). Under that rule, the plaintiffs would only be able to sue the bank for conversion if they showed that the money they were trying to retrieve could be considered "specific chattel" -- such as certain coins or a certificate of deposit -- and they have not done so. See *Compass Bank v. Villarreal*, No. L-10-8, 2011 WL 1740270, at *11 (S.D. Tex. May 5, 2011). Therefore, the plaintiffs' claim for conversion is dismissed.

4. *Amending without Leave*

Lastly, Standard argues that the plaintiffs' second amended complaint should be dismissed in its entirety because it was filed without leave. Standard Motion at 8. Standard further contends that the court should not grant the plaintiffs leave to amend because the second amended complaint did not add anything to the first

amended complaint that would allow it to survive dismissal. *Id.* at 8-9. The court disagrees. The second amended complaint added details about the plaintiffs' dispute with Standard, and while it did not make out a viable claim for conversion, it did state a claim for breach of contract.

### III. CONCLUSION

For the reasons stated above, Aviel's motion to dismiss is **GRANTED**, and Standard's motion to dismiss is **GRANTED** on the plaintiffs' claim for conversion but **DENIED** on the plaintiffs' claim for breach of contract.

**SO ORDERED**.

January 28, 2014.

_____
**A. JOE FISH**
**Senior United States District Judge**