UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


MORRIS JAFFER, ET AL.,       )
                              )
        Plaintiffs,      )
                              )      CIVIL ACTION NO.
VS.                      )
                              )      3:13-CV-1674-G
STANDARD CHARTERED BANK,    )
                              )
        Defendant.     )


## MEMORANDUM OPINION AND ORDER


Before the court is the motion of the defendant, Standard Chartered Bank

("Standard"), to dismiss this case pursuant to Federal Rules of Civil Procedure 19(b),

12(c), and 12(b)(7) (docket entry 37).  For the reasons stated below, the motion is

granted.

## I. BACKGROUND

The facts of this case were previously discussed in the court's opinion dated

January 28, 2014.  *See* Memorandum Opinion and Order of January 28, 2014 at 1-3

(docket entry 31).  To briefly review, the case concerns an allegedly breached

investment contract and access to funds in a Ghanaian bank account.  The plaintiffs,

Morris Jaffer and Anthony Fertitta, seek recovery of funds in an account with

Standard Chartered Bank Ghana ("Standard Ghana") and damages, both of which

are sought from Standard, which does business in New York and has its principal

place of business in London, England.  Second Amended Complaint ("Complaint")

¶¶ 13-15 (docket entry 24); Defendant's Answer to Second Amended Complaint

("Answer") ¶ 6 (docket entry 35).  An associate of the plaintiffs, Brent Mann,

requested information about the money in the bank account but was told by

Standard's Client Services Group that Standard did not have access to the account,

and that Mann should contact Standard Ghana directly.  *See* Exhibit 2 in Support of

Second Amended Complaint (docket entry 24-2).  Throughout this correspondence,

Standard stated that in its records, it could only view the amount of the original

credit to the account, but could not access information regarding what happened to

the funds after the deposit.  *Id.*  Standard also repeatedly told Mann that the

Ghanaian Financial Intelligence Unit had placed a hold on the money.  *Id.*

The plaintiffs then filed this suit alleging breach of a depository contract and

seeking recovery of the money in the Ghanaian bank account from Standard.

Complaint ¶ 26.  In answering the complaint and in the present motion, Standard

objects to any claims made against it, and argues that Standard Ghana is an

independent corporation and an indispensable party to the case under Rule 19(b) of

the Federal Rules of Civil Procedure, over which the court cannot gain personal jurisdiction, meaning that the court should dismiss the case.  *See* Answer; Motion to Dismiss for Failure to Join an Indispensable Party ("Motion to Dismiss") (docket entry 37).

Standard maintains that Standard Ghana is not a branch, but a legally and operationally separate entity.  Answer ¶ 21.  It asserts that Standard Ghana is a Ghanaian corporation, traded on the Ghanaian stock market, and only has client accounts within Ghana.  Motion to Dismiss at 2, 5.  Furthermore, Standard argues that while it may own roughly two-thirds of Standard Ghana's outstanding ordinary shares, and Standard Ghana may use the "Standard Chartered Bank" brand name and logos, it has no control over the operations of Standard Ghana.  Declaration of Andrew Willans ¶¶ 9-10, Exhibit 2 to Appendix in Support of Defendant's Motion to Dismiss ("Defendant's Appendix") (docket entry 38-2).  Both corporations keep separate accounting records, issue separate annual reports, have no common directors, are regulated by different regulatory bodies, and do not have access to each other's depository records.  *Id.* ¶ 11.  Finally, Standard maintains no client accounts inside of Ghana, so it argues that no depository contract could exist between itself and the plaintiffs and that any such contract must exist with Standard Ghana.  Declaration of Larry Fitzgerald ¶ 6, Exhibit 1 to Defendant's Appendix (docket entry 38-1).

Thus, Standard filed the motion at issue, seeking to dismiss the suit due to an indispensable absent party, Standard Ghana.  *See generally* Motion to Dismiss.  The plaintiffs' response centered around the email communications between Mann and Standard's client services representative.  *See* Plaintiffs' Response to Defendant's Motion to Dismiss ("Plaintiffs' Response) (docket entry 43).  The plaintiffs allege that this activity forms the grounds for their lawsuit, and argue that Standard "obfuscate[s]" the facts of its involvement, hinting at incomplete corporate separateness, but they put forward no further evidence to support a piercing of the corporate veil.  See *id.* at 2.  The defendant filed a reply in support of its motion.  *See* Defendant's Reply in Support of its Motion to Dismiss ("Defendant's Reply") (docket entry 44).  The motion to dismiss is now ripe for decision.

## II.  ANALYSIS

### A.  Procedural Issues

Earlier in this case, before it filed an answer, Standard filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which was granted in part and denied in part.  *See* Motion to Dismiss Second Amended Complaint (docket entry 28); Memorandum Opinion and Order of January 28, 2014.  Not included within that motion was a Rule 12(b)(7) failure to join an indispensable party defense that it later asserted in its answer to the plaintiffs' second amended

complaint, *see* Answer at 7, and now in the present motion to dismiss.  *See* Motion to Dismiss.

In general, Rule 12(b) defenses must be brought in a single motion, before filing an answer, if a defendant seeks to raise them before answering.  *See* FED. R. CIV. P. 12(b), 12(g)(2).  A Rule 12(b)(7) defense can otherwise be raised in a responsive pleading, a Rule 12(c) motion, or at trial.  *See* FED. R. CIV. P. 12(h)(2).  In this case, Standard has already filed a 12(b) motion and an answer, but now attempts to file a 12(b)(7) motion to dismiss.  While Standard may properly raise such an argument in a post-answer setting in a 12(c) motion, it has not done so here.  Therefore, under Rules 12(g) and 12(h)(2), its motion is procedurally barred.

However, the court may raise, *sua sponte*, a Federal Rule of Civil Procedure 19 problem.  The Supreme Court has held that:

> [T]he established practice of courts of equity [is] to dismiss the plaintiff's bill if it appears that to grant the relief prayed for would injuriously affect persons materially interested in the subject matter who are not made parties . . . and [this practice] may be enforced by the court, *sua sponte*, though not raised by the pleadings or suggested by the counsel.

*State of Minnesota v. Northern Securities Company*, 184 U.S. 199, 235 (1902).  The Court reasoned that dismissal in these situations could be warranted because courts should seek to prevent injustice and future litigation stemming from absent parties with a material interest in a suit.  See *Northern Securities Company*, 184 U.S. at 235;

- 5 -

see also *Shields v. Barrow*, 58 U.S. 130, 139 (1854) (discussing the Court's equitable

principle of dismissing a case in the absence of an indispensable party).

The Fifth Circuit has similarly raised the indispensable party issue *sua sponte*,

stating that:

> [T]he law is clearly settled that in diversity cases the
> question of indispensable parties is inherent in the issue of
> federal jurisdiction and that indispensable parties must be
> joined, sua sponte by the court if need be, even though to
> do so destroys complete diversity of citizenship of the
> parties and ousts federal courts of jurisdiction.

*Jett v. Zink*, 362 F.2d 723, 726 (5th Cir.), *cert. denied sub nom. Chamberlain v. Zink*, 385

U.S. 987 (1966), and *Zink v. Pack*, 385 U.S. 987 (1966); see also *Hood ex rel.*

*Mississippi v. City of Memphis, Tennessee*, 570 F.3d 625, 632-33 (5th Cir. 2009)

(affirming the district court's *sua sponte* dismissal of a case due to the inability to join

an indispensable party), *cert. denied*, __ U.S.__, 130 S.Ct. 1319 (2010).  Accordingly,

even though Standard's 12(b)(7) motion to dismiss is procedurally barred, the court

will *sua sponte* raise the issue and determine whether Standard Ghana is an

indispensable party that cannot be joined, warranting dismissal of this case.[*]

---

[*]      In its motion to dismiss, Standard attempts to bring its 12(b)(7) motion
outside the restrictions of Rule 12(h)(2) by relying on the following language:
"[F]ailure of the district court to acquire jurisdiction over indispensable parties to an
action deprives the court of jurisdiction to proceed in the matter and render a
judgment."  *Helia Tec Resources Inc. v. GE & F CO. LTD.*, 2011 WL 4383085, at *3
(S.D. Tex. 2011) (quoting *Haas v. Jefferson National Bank of Miami Beach*, 442 F.2d
394 (5th Cir. 1971)).  Motion to Dismiss at 4.  This quotation has been used in a
variety of cases, and one interpretation might suggest that an indispensable party

(continued...)

B. Rule 19(a) Analysis

1. *Legal Standard*

Federal Rule of Civil Procedure 19 "seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986). The first step of a Rule 19 analysis is to determine whether an absent party is necessary to the litigation. FED. R. CIV. P. 19(a). If the court finds that an absent party is necessary, it must analyze whether that party can be joined. *Id.* If the court cannot gain jurisdiction over the necessary party, the court must address certain factors under Rule 19(b) to determine whether adjudicating the dispute in the absence of the necessary party can be done "in equity and good conscience," or if the case should be dismissed due to the inability to join the indispensable party. FED. R. CIV. P. 19(b).

---

[*](...continued)
deprives the court of subject-matter jurisdiction, which would require the court to allow a motion to dismiss on Rule 19 grounds at any time under Rule 12(h)(3).

Yet this interpretation appears to be incorrect, as a tracing of the *Helia Tec Resources* quotation reveals. It seems to stem from *Schuckman v. Rubenstein*, 164 F.2d 952, 957 (6th Cir. 1947), *cert. denied*, 333 U.S. 875 (1948), applying *Northern Securities Company*, 184 U.S. at 235, which itself relied on *Shields v. Barrow*, 58 U.S. at 137. In *Shields*, the Court indicated that the nonjoinder of a party, even an indispensable one, does not defeat jurisdiction, but that there is a strong rule of equity urging dismissal of a case when a ruling would violate *Mallow v. Hinde*, 25 U.S. 193, 198 (1827), and unjustly adjudicate the rights of an absent party. *Shields*, 58 U.S. at 139-43.

Furthermore, cases relying on the language that Standard cites, such as *Haas,* do not hold that a court dealing with the joinder of an indispensable party never has jurisdiction over the case, merely that it is inequitable to proceed without joining an indispensable party. See *Haas*, 442 F.2d at 396.

A party is deemed necessary under Rule 19(a)(1) if in its absence (1) "the court cannot accord complete relief among existing parties"; (2) disposition of the action may, as a practical matter, "impair or impede" the ability of the absent party to protect "an interest relating to the subject of the action"; or (3) those parties presently in the case will be "subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations." *See* FED. R. CIV. P. 19(a)(1); *Pulitzer-Polster*, 784 F.2d at 1308-09.  The nature of Rule 19 requires that courts make "highly practical, fact-based decision[s]." *Pulitzer-Polster*, 784 F.2d at 1309.  In making those decisions, the advisory committee notes to Rule 19 offer some guidance:

> Clause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court.  The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter.

FED. R. CIV. P. 19(a) advisory committee's note.

In the Fifth Circuit, among others, subsidiaries that are the primary participants in the events giving rise to litigation are considered necessary parties that are required to be joined in that litigation.  See *Freeman v. Northwest Acceptance Corporation*, 754 F.2d 553, 559 (5th Cir. 1985).  In a case involving a claim for conversion against a corporation, the Fifth Circuit found that one of the corporation's subsidiaries "was more than an active participant in the conversion."  *Id.*  The court

- 8 -

held that in such a situation, "[c]ase law in this and other circuits uniformly supports the proposition that joinder of the subsidiary is required." *Id.* The district court in *Timberlake v. Synthes Spine, Inc.*, 2011 WL 2607044 (S.D. Tex. 2011), followed this doctrinal line in the products liability realm. The *Timberlake* court ruled that a subsidiary that was the primary actor in designing, manufacturing, and selling an allegedly defective product constituted a necessary party, and after conducting a Rule 19(b) prejudicial analysis, the court dismissed the case against the parent company. *Id.*, at *2-5; see also *Gay v. AVCO Financial Services, Inc.*, 769 F. Supp. 51, 56 (D.P.R. 1991) ("Where the subsidiary is an active participant in the activity alleged as the basis for recovery, the subsidiary should be a party to the action.").

Additionally, parties to a contract are generally considered necessary to litigation concerning that contract. See, *e.g.*, *Travelers Indemnity Company v. Household International, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991). The court in *Travelers Indemnity Company* held that an insurer's subsidiary that initiated a contract for an insurance policy constituted a necessary party to a lawsuit concerning that insurance policy, even though the subsidiary's parent company assumed all of the risks and liabilities of the policy. *Id.* The court surveyed authority from several circuits and found that "the precedent supports the proposition that a contracting party is the paradigm of an indispensable party." *Id.* The Court of Appeals for the District of Columbia has similarly held that a depositor was a necessary party when a plaintiff

sued a bank to recover contract fees from the depositor's bank account. *Cloverleaf Standardbred Owners Association, Inc., v. National Bank of Washington*, 699 F.2d 1274, 1275-76 (D.C. Cir. 1983). The bank had offset the third-party depositor's defaulted loan with funds from his account, which the plaintiff then sought to reach. *Id.* at 1276. Since the "very agreement at issue" in the lawsuit was between the plaintiff and the depositor, and not the bank, the court held that the depositor was a necessary party. *Id.* Indeed, the court found that all three Rule 19(a) factors were "implicated when the person whose obligation is centrally at issue is missing from the action." *Id.* at 1278-79; see also *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F. Supp. 831, 836 (D. Del. 1978) (finding that the only company that signed a contract with the plaintiff and would normally be liable for the obligations under it was an indispensable party).

## 2. *Application*

Given the evidence produced thus far in this case, the court concludes that Standard Ghana is a necessary party, as it constitutes both a primary actor in the events giving rise to this litigation and a central contracting party. Because Standard has no client accounts in Ghana, it appears that Standard Ghana must have been the party to contract with Aviel to establish the bank account. *See* Motion to Dismiss at 2-3. Standard Ghana is the last bank known to have the plaintiffs' funds, and it is the bank involved in the Ghanaian Financial Intelligence Unit's investigation. *See*

Exhibit 2 in Support of Second Amended Complaint.  Both of these factors point towards Standard Ghana being central to the contract and the events surrounding that contract.  Even the plaintiffs' evidence, namely the email chain in which Standard stated that it only had access to limited information and directed further inquiry to Standard Ghana, illustrates that Standard Ghana is the primary actor and the party with the most knowledge of the bank account.  *Id.*  Finally, Standard Ghana would likely have been the party to breach the depository contract (since Standard has no control over the plaintiffs' bank account in Ghana).  Therefore, the court concludes that Standard Ghana is a necessary party to this case.

## C.   Piercing the Corporate Veil

Before moving to a Rule 19(b) analysis, the court must briefly consider whether Standard functioned as an *alter ego* of Standard Ghana, which would allow the plaintiffs to pierce the corporate veil between the two entities.  If the plaintiffs can pierce the corporate veil, then any actions taken by Standard Ghana in this dispute would be imputed to Standard, thus merging the identities of the two corporations for the purposes of the Rule 19(a) analysis.  That would mean that Standard Ghana would not be a necessary party to this case, because as an *alter ego* of Standard Ghana, Standard would have had sufficient control and knowledge over Standard Ghana such that Standard would not be prejudiced by Standard Ghana's absence.

### 1. *Legal Standard*

"It is a general principle of corporate law, deeply ingrained in our economic and legal systems, that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quoting William O. Douglas & Carroll M. Shanks, *Insulation from Liability through Subsidiary Corporations*, 39 YALE L.J. 193, 193 (1929)). Furthermore, "Texas courts are loathe to merge the separate legal identities of parent and subsidiary." *Miles v. American Telephone & Telegraph Company*, 703 F.2d 193, 195 (5th Cir. 1983). For that reason, the party seeking to pierce the veil holds the burden of establishing *alter ego* liability. See *Coryell v. Phipps*, 128 F.2d 702, 704 (5th Cir. 1942), *aff'd*, 317 U.S. 406 (1943).

To meet this burden, a plaintiff must show that a parent corporation exercised control and dominion over a subsidiary to such a degree that it was only a conduit through which the parent conducted its business, such that it would be inequitable to continue to recognize the fiction of separate corporate identities. See *Japan Petroleum Co. (Nigeria) Ltd.*, 456 F. Supp. at 839-41 (citing *Pacific Can Co. v. Hewes*, 95 F.2d 42, 45-46 (9th Cir. 1938)) (finding that control is the central issue in an *alter ego* analysis). To determine whether a subsidiary acted as an *alter ego* of a corporation, the Fifth Circuit has looked at factors such as: (1) maintenance of distinct and adequately capitalized financial units; (2) separateness of daily operations;

(3) "formal barriers between management of the two entities," with each seeking its own interests; (4) "those with whom the corporations come in contact [being] apprised of their separate identity"; (5) "common stock ownership"; (6) "common directors or officers"; and (7) "separate books and accounts," among a few others. *Miles*, 703 F.2d at 195-96.  In *Miles*, after working through those factors, the court decided that a parent company did not exercise the dominion over its subsidiaries needed to pierce the veil, even though the subsidiaries were wholly-owned, shared a director, and had various contracts between themselves and the parent, including a revenue sharing agreement.  *Id.* at 196-97.  The court found controlling the fact that the subsidiaries were adequately capitalized and functioned for the most part autonomously, even though that was within a cooperative business venture with the parent.  *Id.*

The Fifth Circuit has also reasoned that "of course the parent may dominate the subsidiary," as the parent can "dictate the direction, the form and the style of the subsidiary." *Edwards Company, Inc. v. Monogram Industries, Inc.*, 700 F.2d 994, 1002 (5th Cir. 1983), *overruled on other grounds by Edwards Company, Inc. v. Monogram Industries, Inc.*, 730 F.2d 977, 985-87 (5th Cir. 1984) (en banc) (overturning the Fifth Circuit panel's decision to pierce the corporate veil, but not disturbing the panel's language concerning the difficulty of prevailing on an *alter ego* theory).  In the *en banc* rehearing, the *Edwards* court decided that a parent company was not acting as an *alter*

*ego* of its subsidiary even though it shared directors and officers with the subsidiary, did not make any products on its own, and passed various "loans" between itself and the subsidiary. *Edwards*, 730 F.2d at 985-87; see also *Hargrave v. Fibreboard Corporation*, 710 F.2d 1154, 1160-61 (5th Cir. 1983) (ruling that two corporations indisputably conducted autonomous business and financial affairs and were thus not *alter egos*); *Fitz-Patrick v. Commonwealth Oil Company*, 285 F.2d 726, 730 (5th Cir. 1960) (piercing the corporate veil because a subsidiary's only purpose was to pass along the benefits of a concession by the Haitian government in an oil deal); *Amarillo Oil Company v. Mapco, Inc.*, 99 F.R.D. 602, 606 (N.D. Tex. 1983) (Robinson, J.) (finding that a subsidiary that owned disputed liquid hydrocarbons was not an *alter ego* of the defendant corporation, even though the subsidiary did not handle its own tax, legal, or accounting work, needed approval for large expenditures before entering into contracts, and sold almost all of its production to other subsidiaries of the parent).

## 2. *Application*

The plaintiffs have not alleged sufficient facts to show the requisite degree of dominion and control needed to pierce the corporate veil between Standard and Standard Ghana. The only evidence the plaintiffs have produced to establish an *alter ego* relationship are the administrative emails from Standard's client representative to Brent Mann, and the fact that Standard Ghana uses some of the "Standard Chartered

Bank" branding.  *See* Exhibit 2 in Support of Second Amended Complaint.  However, these two acts are rather insignificant compared to all of the *Miles* factors that weigh in favor of the defendant.  For instance, Standard only owns "roughly two-thirds" of Standard Ghana's outstanding stock, the two corporations have no common directors, and they keep separate accounting books and business records and issue separate annual reports.  *See* Motion to Dismiss at 5.  Regarding the emails, simple acts of administrative convenience may be made without establishing any sort of agency relationship.  See *Japan Petroleum Co. (Nigeria) Ltd.*, 456 F. Supp. at 846 (ruling that the corporate veil was not pierced despite some coordinated operations between the parent and subsidiary).  Furthermore, the Standard Ghana website discloses that it is a distinct corporation.  *See* Motion to Dismiss at 5.  Given the relative lack of evidence put forward by the plaintiffs and the compelling evidence favoring the defendant, the plaintiffs have not shown that they can pierce the corporate veil, meaning that Standard Ghana is indeed a necessary party to this litigation.

### D.   Rule 19(b) Analysis

#### 1.  *Personal Jurisdiction*

Because Rule 19(b) first asks whether a necessary party under Rule 19(a) "cannot be joined," the court must next consider whether it can exercise personal jurisdiction over Standard Ghana.  If so, joinder will be required under Rule 19(a); if

jurisdiction is lacking, the court will have to consider the Rule 19(b) factors to determine whether this case must be dismissed.

### a.  Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  A defendant is subject to the personal jurisdiction of a federal court sitting in diversity "to the same extent that he would be amenable to such jurisdiction in a state court of the forum." *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).  Therefore, the court must first apply state law to analyze whether Texas, the forum state, could assert long-arm jurisdiction.  See *id.*  The Texas long-arm statute confers jurisdiction to the extent that it is permissible under the federal constitution.  See *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); see also TEX. CIV. PRAC. & REM. CODE § 17.041 *et seq.* (Texas long-arm statute).  Therefore, the court need only concern itself with the federal due process inquiry.  See *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 647 n.1 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994).

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant:  (1) the nonresident must have sufficient contacts with the forum, resulting from affirmative action on his part, such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair and reasonable to require the nonresident to defend himself in the forum state.  See *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign."  *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)) (internal quotation marks omitted).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal quotation marks omitted).  However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984.  In determining whether the exercise of jurisdiction is appropriate, the

- 17 -

Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of in personam jurisdiction may be exercised over a nonresident defendant -- specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action "arises from or relates to the defendant's contact with the forum state," and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quoting *Latshaw*, 167 F.3d at 211) (internal quotation marks omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987). General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)). The

"purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (internal citations omitted).

b.  Application

The court concludes that it cannot exercise personal jurisdiction over Standard Ghana.  General jurisdiction does not exist, as there has been nothing resembling "continuous and systematic" contacts between Standard Ghana and Texas.  See *Helicopteros Nacionales*, 466 U.S. at 415-16.  Furthermore, Standard Ghana has not had any contacts with Texas, nor made purposeful availment of it as a forum, so there are no grounds for specific jurisdiction.  There has been no communication between Standard Ghana and the plaintiffs, and the depository contract (or communication related to creating one) was not initiated in Texas.  The Fifth Circuit has required significantly more evidence of contacts and purposeful availment than Standard Ghana's act of simply holding deposited money that originated in Texas.  See *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (ruling that no minimum contacts or purposeful availment existed, even when the party contracted and created a long-term business relationship with a Texas-based corporation, contemplated arbitration in Texas, engaged in communications with Texas residents to carry out contracts, and wired payments into Texas).  Furthermore,

Standard Ghana's affiliation with Standard, which concedes personal jurisdiction, cannot be attributed to Standard Ghana as a subsidiary, since the companies have maintained corporate formalities.  See *Cannon Manufacturing Company v. Cudahy Packing Company*, 267 U.S. 333, 338 (1925).  Therefore, the court cannot exercise personal jurisdiction over Standard Ghana.

## 2.  *Rule 19(b) Factors*

Because the court has found that Standard Ghana is a necessary party over which it cannot exercise personal jurisdiction, it must proceed to the final step of its analysis and examine the factors listed in Rule 19(b) to determine whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  FED. R. CIV. P. 19(b).  The court must analyze the following four factors to determine whether the case should be dismissed:

> (1) to what extent a judgment rendered in the party's absence might be prejudicial to that party or others in the lawsuit;
>
> (2) the extent to which possible prejudice can be lessened or avoided by including protective provisions in the judgment, specially shaping the relief, or utilizing other measures;
>
> (3) whether a judgment rendered in the party's absence will be adequate; and
>
> (4) whether the plaintiff will have an adequate remedy if the party cannot be joined.

*Id*.

The first factor evaluates the possible prejudice that might arise against existing or absent parties as a result of the court adjudicating a dispute despite the absence of an indispensable party.  See *Doty v. St. Mary Parish Land Company*, 598 F.2d 885, 887 (5th Cir. 1979).  In conducting this inquiry, courts may look at practical matters impairing or impeding an absent party's ability to protect itself.  *Id.*  In Standard Ghana's case, even though *res judicata* would not bar its ability to defend itself in a subsequent suit, it still has an interest in defending the claims against it in the present case.  For instance, Standard Ghana could be prejudiced if the plaintiffs were to prevail against Standard in this suit, and afterwards Standard Ghana had to defend itself in a contribution and indemnity case, where access to the plaintiffs' evidence might be more limited.  Furthermore, Standard Ghana could face an unintentional *stare decisis* effect in a later suit.  In an insurance case where the insured was the absent party, the Fifth Circuit affirmed the district court's reasoning that it would be "nonsensical to suggest that a declaration, in this Court, of liability or non-liability will have no practical effect upon the [claimants], given the possibility . . . of their obtaining a judgment against the insureds."  See *Ranger Insurance Company v. United Housing of New Mexico, Inc.*, 488 F.2d 682, 683 (5th Cir. 1974) (alteration in original) (quoting the district court opinion).  Along those lines, Standard Ghana might be disadvantaged in a subsequent suit if this court ruled against Standard, simply because the court in that later case might give undue weight to this ruling.

Additionally, the existing parties, Standard and the plaintiffs, could face some prejudice.  Standard could face inconsistent verdicts if it were held liable in this suit for Standard Ghana's actions and was then unable to prevail on a subsequent contribution and indemnity case against Standard Ghana, which might have to be litigated in a Ghanaian forum.  The plaintiffs might be practically prejudiced by not having Standard Ghana as a party from whom to garner evidence, making it more difficult to prevail in this case.  Furthermore, if the plaintiffs lost here as a result of those evidentiary difficulties, they could face estoppel on any future attempt to bring a claim.

As to the second Rule 19(b) factor, while the court would mitigate the prejudice to the best of its abilities in any judgment, the ways to do so in this case are limited.  The court would not seek to adjudicate the rights of an absent third-party, such as Standard Ghana, and would hope *res judicata* principles would be upheld in any subsequent litigation in other forums, but the practical prejudice stemming from a verdict against either party would likely remain.

Regarding the third factor, because the court cannot join Standard Ghana in this case or compel it to provide evidence to the plaintiffs, any judgment rendered in Standard Ghana's absence would not be adequate to resolve this dispute.  The plaintiffs appear to be unable to provide any evidence supporting a veil-piercing (or any other) theory of liability against Standard, and while a valid claim against

Standard Ghana may exist, the court cannot render a judgment against it.  Therefore, any attempt to provide relief to the plaintiffs, if in fact they have been wronged, would be hollow.  Proceeding without Standard Ghana as a party would thus produce an inadequate result, wasting the resources of all parties involved.

Finally, a proper alternative forum for this litigation does exist, even though it would likely be a Ghanaian one.  If, as Standard alleges, Standard Ghana maintains no client accounts in the U.S. or outside of Ghana, *see* Motion to Dismiss at 2, finding a forum outside of Ghana with personal jurisdiction over Standard Ghana might be as difficult as it was in this case.  However, it is possible that some aspects of Standard Ghana's association with Standard might allow a plaintiff to find personal jurisdiction in an appropriate U.S. forum.  If not, certainly a proper Ghanaian forum would have jurisdiction over a bank incorporated there.  While this may not be as convenient for the plaintiffs as this court, a Ghanaian forum would be more suited to deliver an adequate verdict and remedy against the proper parties, minimizing prejudice and wasted litigation resources.

In sum, the court concludes that sufficient prejudice exists from Standard Ghana's absence that the court cannot proceed in equity and good conscience, as Federal Rule of Civil Procedure 19(b) requires.  Therefore, the plaintiffs' complaint must be dismissed.

E.  Request to Amend

As an alternative to dismissal, the plaintiffs request leave to amend their complaint "to assert that Standard Chartered is a proper party to this lawsuit due its representation of [Standard Ghana] in the United States without obvious caveat." Plaintiffs' Response at 4.  However, a motion to amend should be denied if amending a claim would be futile.  See *Avatar Exploration, Inc., v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320-321 (5th Cir. 1991).  "The liberal amendment rules of F.R. Civ. P. 15(a) do not require that courts indulge in futile gestures."  *DeLoach v. Woodley*, 405 F.2d 496, 496-97 (5th Cir. 1968).  It is unclear what legal theory the plaintiffs are seeking to assert in their request to amend.  Given the plaintiffs' inability to pierce the corporate veil, and absent any alleged acts of fraud, the plaintiffs do not appear to have any viable claim against Standard.  Therefore, any amendment would be futile, and the plaintiffs' motion to amend should be denied.

III.  CONCLUSION

For the reasons stated above, Standard's motion to dismiss is **GRANTED**. Judgment will be entered dismissing this case without prejudice to its pursuit in a forum in which Standard Ghana may be joined.

**SO ORDERED**.

July 2, 2014.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**

- 24 -